[No. 11332. Department Two. January 8, 1914.]

MABEL LE VETTE, *Appellant*, v. HARDMAN ESTATE *et al.*,
*Respondents.*[1]

LANDLORD AND TENANT—LEASE—CONDITIONS—EXEMPTION OF DAMAGES—NEGLIGENCE OF LESSOR—LIABILITY. A provision in a lease of a storeroom that the lessee shall hold the lessor harmless from all damages by reason of accidents on the premises or the bursting of pipes, above, upon, or about the building or any damage occasioned by water, or the acts or neglect of cotenants, only includes the damages expressly waived, and does not excuse an injury occasioned by the negligence of the landlord.

SAME—DEFECTIVE PREMISES—DAMAGES TO TENANT—NEGLIGENCE OF LANDLORD—EVIDENCE—QUESTION FOR JURY. The negligence of the lessor of a storeroom on the ground floor of a hotel building, in failing to control and keep the upper stories in a condition of reasonable safety, is for the jury, where it appears that the upper tenant moved out, and the upper part of the building was broken into several times and a washstand torn out, leaving a water pipe broken, the water having been turned off; and, upon renting a vacant house in the rear connected with the same water service pipe, the lessor had the water turned on without making an investigation of the upper stories, whereby the water escaped and damaged the lessee's goods in the storeroom.

PRINCIPAL AND AGENT—LIABILITY OF AGENT. A tenant who dealt with a known owner and sought to hold the owner liable for injury to goods, cannot hold the owner's rental agent.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 13, 1912, dismissing an action by a tenant for injury to goods, on granting a nonsuit. Affirmed as to one defendant; reversed as to the other.

*McCafferty, Robinson & Godfrey*, for appellant.

*Reed & Hardman*, for respondent Hardman Estate.

*Robert F. Booth*, for respondent John Davis & Company.

MORRIS, J.—Appeal from an order of nonsuit and dismissal, in an action brought by a tenant to recover damages for injuries to her goods, caused by leakage of water from an

[1]Reported in 137 Pac. 454.

upper story. The facts, so far as they are pertinent to our inquiry, are about these: The Hardman Estate is the owner of a building on Yesler Way, in Seattle, the lower portion of which is divided into storerooms, and the upper is used as a hotel. Appellant, who was engaged in the millinery business, occupied one of the storerooms under a written lease. Some time in August, 1911, the lessee of the hotel portion, although his lease had not expired, vacated the upper stories, and they continued vacant until after the damage complained of. This lessee not having paid his water rent, the city turned off the water from the hotel portion of the building some time in September. This water service so turned off, it appears, did not affect the storeroom occupied by appellant. There was, however, a dwelling on the rear of the lot which was supplied with the same service pipe as the hotel, and which had been vacated for some time. This vacant dwelling in the rear was rented on November 15, and orders given the city to turn on the water, which was done on November 16. Soon after the water was turned on, it began to flow through the ceiling and into the room occupied by appellant, causing the damage complained of. An examination of the premises disclosed the fact that, in one of the rooms over the storeroom occupied by appellant, a washstand had been torn from the wall and the water pipes broken, making quite a hole through which the water was escaping. It was also discovered that a large rear window opening on the alley had been broken, making an opening large enough for a person to enter the building. It was also shown that, on three other occasions during the vacancy of the hotel portion, the windows on the alley had been broken, supposedly by boys getting into the building. The lease contained the following clause:

"That the said lessee shall hold harmless the said lessor and the said lessor's agents from all damages of every kind or nature whatsoever that may occur by reason of any accident on said premises, and from any damage done or occasioned by

or from plumbing, gas, water, steam, or other pipes or sewerage; or the bursting, leaking or running of any cistern, tank, wash-stand, or waste-pipe in, above, upon or about said building or premises; and from any damage occasioned by water, snow, or ice being upon or coming through the roof, skylight, wall, trapdoor, or otherwise, and from damages arising from acts of neglect of co-tenants or other occupants of the same building, or of any owners or occupants of the adjacent or contiguous property."

This stipulation, in the judgment of the lower court, exempted the respondents from any responsibility in the matter, and was the basis of the ruling complained of. Stipulations of this character cannot be enlarged upon to include any damage not expressly waived, and it is generally held that such a stipulation will not excuse an injury occasioned by the negligence of the landlord in the management and use of any part of the premises remaining under his control. *Levin v. Habicht*, 45 Misc. 381, 90 N. Y. Supp. 349; 1 Thompson, Negligence, § 1143. It has also been held that such stipulations cover only ordinary wear and tear, or sudden action of the elements which could not be guarded against, or negligent acts of other tenants. *Randolph v. Feist*, 23 Misc. 650, 52 N. Y. Supp. 109; *Worthington v. Parker*, 11 Daly (N. Y.) 545.

It is clear from the facts that the damage to appellant was not caused by any breaking of water pipes on the premises leased to her, nor was it due to any negligence of cotenants, nor of owners or occupants of adjacent property, but was due to the bursting or breaking of water pipes on premises not covered by the lease but within the building, and fall within that clause of the waiver exempting damage occasioned by bursting or leaking of washstands in, above, upon, or about the building, or by water coming through the walls. We think it is also clear that the cause of the damage was not an ordinary leak due to defective plumbing or usual wear, such as might be anticipated in any building and thus be within the contemplation of the parties when entering into a

stipulation of this character, but was an unusual and unexpected happening, due to other than natural and anticipated defects or lack of repair in any fixture forming part of the water system of the building.

There was no evidence that the proximate cause of this damage was any act of the landlord; and if appellant's cause must rest upon some positive act of the landlord, it must fail. Negligence, however, may be predicated upon the failure to act where the law imposes a duty; and as between the appellant and the landlord, the occupancy and possession of the upper stories, with all the duties flowing from such a relation, were with the landlord. The landlord could not excuse itself from this duty to appellant because of the fact that, as between it and the lessee of the upper stories, the possession and occupancy was that of the latter. And this, we think, is so notwithstanding the tenant of the upper story had vacated within the term covered by the lease and the legal right of possession still remained in him. This might be and doubtless was true, as between the landlord and the upper tenant; and as between them, the upper tenant was still bound under his lease. But, whatever may have been the legal fiction, the facts were the upper tenant had vacated the premises and thus occasioned an actual, if not a legal, vacancy. Possession and control must rest somewhere, and as between the landlord and appellant, who was no party to the lease held by the upper tenant and not bound by any contract between this tenant and the landlord, this possession and control was, we think, with the landlord. It, therefore, seems to us, conceding the rule to be that the landlord is under no legal obligation to repair the demised premises, that it was the duty of the landlord to so control and preserve the upper stories as to keep them in a condition of reasonable safety, in so far as such a condition affected the tenant of the lower story; that, if it negligently suffered the upper story to be out of repair to such an extent as to damage the tenant of

the lower story, it must respond in damages, and that the ordinary rule we have just referred to does not cover such condition as the facts here present. *Priest v. Nichols*, 116 Mass. 401.

So far as we can gather from the facts, the injury was caused by evilly disposed persons breaking into the building through the windows in the alley and outside of the premises covered by the lease to appellant. But the duty to guard the premises, so that such persons could not break into the building and injure the fixtures in the upper story, rested with the landlord and not with the appellant; and as it also appeared that these rear windows had been broken on three previous occasions, thus affording entrance to the upper stories, the landlord is chargeable with knowledge of the fact, and having knowledge it was its duty to guard against any recurrence and the natural consequences of such a trespass, by either protecting the premises from such a breaking, or investigating as to any harm that might have been occasioned thereby. The landlord also knew that the hotel section and the house in the rear were connected with the same water service pipe, and before the water was turned on, should have made an investigation of the upper floors to ascertain whether or not such an act could be done with safety to the premises occupied by appellant. Such failure to properly exercise superintendence over the upper story might, it seems to us, within the facts of this case, be held negligence. *Rosenfield v. Newman*, 59 Minn. 156, 60 N. W. 1085. At least, we are not so clear it was not negligence as to say the question should not have been submitted to the jury. This disposes of the dismissal as to The Hardman Estate.

John Davis & Company was only the rental agent of the owner. Appellant, having dealt with a known owner and having sought to enforce her cause of action against the principal, cannot hold the agent, and as to this respondent the dismissal is sustained.

The judgment is affirmed as to John Davis & Company, and reversed as to The Hardman Estate.

CROW, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.