PRATT, HURST AND COMPANY, LIMITED, Respondent, *v.* EDWARD N. TAILER, as Executor and Trustee under the Will of THOMAS SUFFERN, Deceased, et al., Appellants.

LANDLORD AND TENANT — LIABILITY OF LANDLORD FOR DAMAGES CAUSED BY THIRD PARTY. A provision in a lease that the lessors shall not be liable to the lessee for damages caused by leakage of the roof unless they neglect to make the necessary repairs within a reasonable time after receiving a written notice of such leakage from the lessee, will not exempt them from liability for damages caused by leakage, although no notice was given, where the leakage was caused by their having permitted a third party to use the roof for purposes to which it was not adapted, thereby rendering it leaky and unsafe, to the knowledge of the lessors.

*Pratt, Hurst & Co.* v. *Tailer*, 114 App. Div. 574, affirmed.

(Argued November 13, 1906; decided November 27, 1906.)

APPEAL by permission, from an order of the Appellate Division of the Supreme Court in the first judicial depart-

27

ment, entered July 12, 1906, which reversed an interlocutory judgment of Special Term overruling plaintiff's demurrer to the second separate defense of the answer, sustaining defendants' demurrer to the second cause of action stated in the complaint and dismissing the complaint.

The following questions were certified:

" 1. Does the second cause of action set forth in the complaint herein state facts sufficient to constitute a cause of action ?

" 2. Is the second separate defense contained in the answer of the defendants herein insufficient in law upon the face thereof ? "

The facts, so far as material, are stated in the opinion.

*Edward B. Whitney* and *Winston H. Hagen* for appellants. Under the leakage covenant it was plaintiff's duty to give the defendants written notice of the condition of the roof. (*Doupe* v. *Genin*, 45 N. Y. 119 ; *Idel* v. *Mitchell*, 158 N. Y. 134 ; *Thomas* v. *Kingsland*, 12 Daly, 315 ; 108 N. Y. 616 ; *Lenz* v. *Aldrich*, 6 App. Div. 178 ; *Boss* v. *Jarmulowsky*, 81 App. Div. 577 ; *Reiner* v. *Jones*, 3 Misc. Rep. 406 ; *Wolcott* v. *Sullivan*, 6 Paige, 117 ; 2 McAdam on Landl. & Ten. 1233, 1260 ; *Boden* v. *Scholtz*, 101 App. Div. 2 ; *Schwartz* v. *Monday*, 97 N. Y. Supp. 978 ; *Alperin* v. *Earle*, 55 Hun 211.)

*Arthur L. Marvin* and *Rollin M. Morgan* for respondent. The exemption clause in the lease was not intended by the parties to absolve the landlord from liability for damage caused by his own acts. (*Mynard* v. *S., etc., R. Co.*, 71 N. Y. 180 ; *Holsapple* v. *R., etc., R. R. Co.*, 86 N. Y. 275 ; *Kenny* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 422, 425 ; *Jennings* v. *G. T. R. Co.*, 127 N. Y. 438 ; *Rathbone* v. *N. Y. C. & H. R. R. R. Co.*, 140 N. Y. 48 ; *Appleby* v. *E. C. S. Bank*, 62 N. Y. 14 ; *Allen* v. *W. S. Bank*, 69 N. Y. 314 ; *Kummel* v. *G. S. Bank*, 127 N. Y. 488 ; *Gearns* v. *B. S. Bank*, 135 N. Y. 557 ; *Levin* v. *Habicht*, 45 Misc. Rep. 381.)

WILLARD BARTLETT, J.    The plaintiff corporation is a tenant of a loft in a building of which the defendants are landlords.    In this suit the plaintiff seeks to recover the loss which it has sustained by reason of the leakage of water through the roof of the building, whereby its goods were damaged.    In the first cause of action set out in the complaint it is alleged that the building was six stories high, and that each loft was separately leased and occupied by a separate tenant; that the elevators, stairs, hallways and roof remained in the possession of the landlords, and that the landlords, without the knowledge or consent of the plaintiff, made an agreement with the Holmes Electric Protective Company permitting that corporation to place and install wires, switchboard stations or other apparatus or appliances for a testing station upon the roof of the building, in consideration of which use the Holmes Electric Protective Company agreed to keep the roof in good order and repair.    It is further alleged that the said Holmes Electric Protective Company did place and install certain wires, switchboards and stations on the roof and use the roof for the purpose mentioned, and that such use necessitated the presence of many workmen upon the roof and their walking thereon several times each week and for long periods, and that the roof was not constructed for or adapted to such use, and that such use was calculated to and did injure and damage the roof and cause it to be broken and cause holes to appear therein much sooner than would have been the case if exposed simply to the usual wear and tear and action of the elements. It is further alleged that the defendants well knew that the roof was not suitable or adapted to such use, and that it would be greatly injured thereby; that the Holmes Electric Protective Company negligently allowed the roof to become and remain worn and broken in consequence of such use thereof, and failed to repair the holes and breakage of which the defendants, their agents or servants had full knowledge, and that in consequence of the premises and the negligence of the defendants, their agents or servants, rain entered through the breaks or holes thus made and allowed to remain in the roof

and injured the plaintiff's goods to its damage in the sum of $1,201.38.

By the second cause of action the plaintiff sought to recover the same amount as for a breach of a contract to repair contained in the lease. This cause of action set out substantially the same facts as those alleged in the first cause of action, but pleaded the terms of the lease in addition. In the lease the defendants were the parties of the first part and the plaintiff was the party of the second part. The only portion of the lease material to be considered upon this appeal is the following provision: " * * * it being understood that the parties of the first part shall keep the roof, sky and patent vault lights in order, but shall not be made liable to the party of the second part for any damage caused by leakage of the same, unless they shall neglect to make the necessary repairs within a reasonable time after receiving a written notice of such leakage from the party of the second part."

By their answer the defendants interposed a denial and two separate defenses. The second separate defense set up that part of the lease which I have quoted, and pleaded that no written or other notice of such leakage or of any defect, leak or lack of repair in the roof was received by the defendants from the plaintiff until after the rain storm which did the damage.

The defendants demurred to the second cause of action contained in the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and the plaintiff demurred to the second separate defense contained in the answer on the ground that it was insufficient in law on the face thereof. At the Special Term the defendants' demurrer to the second cause of action was sustained and the plaintiff's demurrer to the second separate defense was overruled. In the Appellate Division the defendants' demurrer to the second cause of action was overruled and the plaintiff's demurrer to the second separate defense was sustained. In other words, the decision at Special Term was in favor of the defendants on both demurrers and the decision in the Appellate Division was in favor of the plaintiff on both demurrers.

The real question presented by the appeal is whether the facts stated in the complaint are sufficient to take the case out of that provision of the lease which declares that the landlords shall not be liable to the tenant for any damage caused by the leakage of the roof unless they neglect to make the necessary repairs within a reasonable time after receiving a written notice of such leakage.   The contention of the plaintiff is that this provision has reference only to such leakage as might occur in consequence of the action of the elements and the usual wear and tear to which the roof would be subjected in its ordinary use and that it has no application to a case in which the roof has been injured and rendered leaky by the affirmative act of the landlords themselves or any one acting negligently with their sanction in occupying or using the roof.   Of course, it is perfectly plain that the landlords would not be relieved of liability for leakage occasioned by their own action or that of their agents in actually making holes in the roof.   It could not have been intended that they were to receive written notice in order to charge them with responsibility for their own personal misconduct or that of others which they authorized or sanctioned.   It seems to me equally plain that they are not protected by this provision in the lease under such circumstances as are set out in this complaint where it appears that they permitted an occupation of the roof by another corporation for purposes which were likely to render it leaky and where they well knew that the roof was not suitable or adapted for the uses to which the corporation proposed to put it and that such use would greatly injure and damage the roof and cause it to wear out.   It is alleged in the complaint, and must of course be taken to be true, that the defendants, their agents or servants had full knowledge of the use to which the roof was put by such corporation " and the condition of the said roof and of the holes and breakages therein, and in disregard of their duty to the plaintiff they negligently and carelessly suffered such use to continue and failed and omitted to have such breakages and holes mended and repaired."   Here we have indeed an express

allegation that the defendants, their agents or servants had actual knowledge of the leaky condition of the roof. How then could it have been contemplated that a further written notice should be n ecessary in order to impose upon the landlords the obligation to repair?

I think the order of the Appellate Division was right and that it should be affirmed, with costs, and that both of the questions certified should be answered in the affirmative.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Order affirmed.