107 EAST THIRTY-FIRST STREET CORPORATION, Respondent, *v.* M. B. CAHN & Co., INC., Appellant.

First Department, November 3, 1933.

*Joseph B. Finkelstein,* for the appellant.

*Emanuel J. Freiberg* of counsel [*Arthur W. Lichtenstein,* attorney], for the respondent.

GLENNON, J. This proceeding was instituted by the service of a petition and precept upon the tenant, M. B. Cahn & Co., Inc., for the recovery of possession of a portion of premises 107 East Thirty-first street, for non-payment of rent. The amount of rent due was the sum of $100 for the month of July, 1932, under a written

lease between the parties. The tenant interposed a general denial and also a counterclaim for damages sustained by it as a result of the landlord's negligence in failing to make repairs to the roof of the premises after having been notified of a defective condition in the roof.

The written lease contained the following provision: " 12. It is expressly agreed and understood by and between the parties to this agreement that the landlord shall not be liable for any damage or injury by water which may be sustained by the said tenant or other person, or for any other damage or injury resulting from the carelessness, negligence or improper conduct on the part of any other tenant, its agents, or employees, or by reason of the breakage, leakage, or obstruction of the city water or soil pipes, or other leakage in or about the said building."

Upon the trial it was conceded that the tenant had defaulted in the payment of the July rent. The only reason for the default was that the tenant claimed that the landlord was responsible to him for damage in a sum in excess of the amount of rental due.

The tenant's proof showed that it occupied the first, second and third floors in an old loft building. On the ground floor there was a store. The fourth floor, also a loft at the time in question, was unoccupied and had been for some time. Prior to the 27th day of June, 1932, Sturman, the secretary and treasurer of the tenant corporation, had complained to Kass, the landlord's authorized agent, concerning the leaky condition of the roof. He informed the agent that whenever there was a heavy rainstorm the roof leaked and damage to his merchandise resulted. He also wrote him to that effect and sent him a bill for the damage on a prior occasion. He likewise testified that Kass, when asked to do something about the leak, said, " All right, I'll take care of it." His testimony further was to the effect that Kass told him that the trouble really was caused by a clogged drain pipe, and that he could not afford to hire a janitor to watch it.

The last time Sturman had a conversation with Kass about the roof was during the month of February or March, 1932. On the night of June twenty-seventh, or the early morning of June twenty-eighth, a severe rainstorm occurred. When defendant opened its place of business on the morning of the twenty-eighth, it found the first floor flooded with water, in many places to a depth of one inch. The second and third floors were likewise flooded. The witness Sturman testified he went to the fourth floor and found water leaking through the ceiling. He noticed the leak in the center of the ceiling and that the water did not come from the sides. Later he also inspected the roof.

The landlord interposed no evidence to rebut that offered by the tenant. At the close of the tenant's proof, the court dismissed the counterclaim as a matter of law upon the authority of *Kirshenbaum* v. *General Outdoor Advertising Co.* (258 N. Y. 489). The landlord practically concedes that the *Kirshenbaum* case has no application here, and that the rule laid down by this court in *Garrity* v. *Propper* (209 App. Div. 508) is controlling. Therein it was stated: " It is clear, however, that said clause does not even attempt to absolve the landlord from his own negligence. In *Drescher Rothberg Co.* v. *Landeker* (140 N. Y. Supp. 1025) Mr. Justice LEHMAN said of a similar clause: ' It seems to me that this clause, interpreted " to get at the real intent of the parties," means simply that the landlord is not to be liable for damages caused by wear and tear, or inherent defects, or the action of the elements, although by the exercise of active vigilance he might have prevented such damages; but it does not exempt him from his liability to repair actual defects, when called to his attention, or from acts of affirmative negligence.' "

The contention of the landlord that the tenant was guilty of contributory negligence as a matter of law has no foundation in fact. The tenant had an absolute right to rely upon the statement of Kass that the defect would be repaired. The tenant had no control whatever either of the roof or of the fourth floor, since both were in the landlord's possession. Furthermore, the point now urged with reference to contributory negligence was not called to the court's attention by the landlord's counsel at the close of the tenant's case. The sole ground urged for the dismissal of the counterclaim and a direction of a verdict in the landlord's favor was the provisions contained in paragraph twelfth of the lease.

Thus the only question which remains for determination is whether or not the tenant made out a *prima facie* case. This we think it did. The testimony of defendant's officer was sufficient to show that the landlord had notice of a defective condition in the roof and that he negligently had failed to repair it.

The determination appealed from and the order and judgment of the Municipal Court should be reversed and a new trial ordered, with costs to the appellant in the Appellate Term and in this court to abide the event.

FINCH P. J., MERRELL, TOWNLEY and UNTERMYER, JJ., concur.

Determination appealed from and judgment and final order of the Municipal Court reversed and a new trial ordered, with costs to the appellant in the Appellate Term and in this court to abide the event.